UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHANGING THE WORLD FILMS, LLC *et al.*,

    *Plaintiffs*,

v.

NATHANIEL PARKER *et al.*,

    *Defendants*.

No. 21-cv-2787 (DLF)

## MEMORANDUM OPINION

The plaintiffs—Selton Shaw, Langston Shaw, and their entertainment company Changing the World Films, LLC—bring this copyright infringement suit against Nathaniel Parker; Tiny Giant Productions, LLC; ASP Film, LLC; TM Film Finance, LLC; and Vertical Entertainment, LLC (together, the "Film Defendants"), as well as Shelton Jackson Lee (also known as "Spike Lee"). First Am. Compl. (FAC), Dkt. 39.  Before the Court are the Film Defendants' Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Dkt. 41, and defendant Lee's Motion to Strike or Motion to Dismiss Plaintiffs' Amended Complaint and Impose Sanctions under Rules 12(b)(2), 12(b)(6), and 15(a), Dkt. 42.  For the reasons that follow, the Court will dismiss the action under Rule 12(b)(2) because it lacks personal jurisdiction over any of the defendants.[1]  The Court also will deny defendant Lee's motion for sanctions.

---

[1] Because the Court will grant the defendants' motions to dismiss on Rule 12(b)(2) grounds, it need not address the defendants' other bases for dismissal under Rule 12(b)(6).

I.  **BACKGROUND**

Selton and Langston Shaw write, direct, and produce films through their film production company, Changing the World Films, LLC. FAC ¶¶ 7–31. In 2017, they submitted an original screenplay titled *A Routine Stop* to the TV One Screenplay Competition. *Id.* ¶¶ 36, 42–43. They allege that a film released at the 2019 Venice Film Festival, *American Skin*, is substantially similar to their screenplay for *A Routine Stop*. *Id.* ¶¶ 51, 60. Defendant Nathaniel Parker wrote, directed, and starred in *American Skin*. *Id.* ¶ 11. Defendants TM Films and Tiny Giant Entertainment produced *American Skin*. *Id.* ¶¶ 12–13. Defendant Vertical Entertainment distributed *American Skin*, *id.* ¶ 14, and defendant ASP Film holds the copyright for the film, *id.* ¶ 16. Defendant Lee promoted *American Skin* at the Venice Film Festival, and his name appears on the film, which is billed as "A Spike Lee Presentation." *Id.* ¶ 15.

The plaintiffs filed a complaint against the defendants alleging direct, vicarious, and contributory copyright infringement claims. Compl., Dkt. 1. Both the Film Defendants and defendant Lee moved to dismiss for lack of personal jurisdiction, Dkts. 22, 23, and the plaintiffs moved for jurisdictional discovery, Dkt. 29. The Court granted in part the plaintiffs' motion for jurisdictional discovery, permitting discovery only "as to the Film Defendants' promotion of *American Skin* in the District of Columbia." Order at 4, Dkt. 35. Following jurisdictional discovery, the plaintiffs filed an amended complaint, Dkt. 39. The Film Defendants, Dkt. 41, and defendant Lee, Dkt. 42, now move to dismiss the amended complaint for, among other things, lack of personal jurisdiction.

II.  **LEGAL STANDARD**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move to dismiss an action when the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "On such a motion,

the plaintiff bears the burden of 'establishing a factual basis for the exercise of personal jurisdiction' over each defendant." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 20 (D.D.C. 2017) (quoting *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)). To meet this burden, a plaintiff cannot rely on conclusory allegations, *id.*, but rather must allege specific facts connecting the defendant with the forum, *see Shibeshi v. United States*, 932 F. Supp. 2d 1, 2–3 (D.D.C. 2013). When ruling on a 12(b)(2) motion, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Triple Up Ltd.*, 235 F. Supp. 3d at 20 (citation omitted). "Ultimately, the [c]ourt must satisfy itself that it has jurisdiction to hear the suit." *Id.* at 20–21 (cleaned up).

Rule 11 requires attorneys to conduct an "inquiry reasonable under the circumstances" before filing a complaint and to certify, among other things, that the complaint "is not being presented for any improper purpose," that the claims and legal arguments are "warranted by existing law or by a nonfriviolous argument" for changing the caselaw, and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). Rule 11 allows the court to "impose an appropriate sanction on any attorney, law firm, or party that violated the rule." Fed. R. Civ. P. 11(c)(1). "[T]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Federal courts also have inherent power to impose sanctions and may "assess attorney's fees when a party has acted in bad faith." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (cleaned up).

Rule 15(a)(2) permits a party to amend its pleading "only with the opposing party's written consent or the court's leave," which "should [be] freely give[n] . . . when justice so requires." Fed R. Civ. P. 15(a)(2).

## III.  ANALYSIS

### A.  Personal Jurisdiction

This Court "may exercise one of two types of personal jurisdiction: (1) 'general or all-purpose jurisdiction' or (2) 'specific or case-linked jurisdiction.'" *Lewis v. Full Sail, LLC*, 266 F. Supp. 3d 320, 323 (D.D.C. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Here, the plaintiffs concede that this Court lacks general jurisdiction over any of the defendants.  *See* Pls.' Opp. at 11, Dkt. 43; *see Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  To determine whether it has specific jurisdiction, the Court "first examine[s] whether jurisdiction is applicable under the [District of Columbia's] long-arm statute and then determine[s] whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

The plaintiffs contend that two subsections of the District's long-arm statute apply to the defendants: (1) a person or entity "transacting any business in the District of Columbia," D.C. Code § 13-423(a)(1); and (2) a person or entity "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia," *id.* § 13-423(a)(4).  Section 13-

423(a)(1) has generally "been interpreted to provide jurisdiction to the full extent allowed by the Due Process Clause"—namely, "when there are minimum contacts between the defendant and the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995) (cleaned up).  In contrast, section 13-423(a)(4) does not stretch so far, as it demands proof beyond what the Due Process Clause requires.  *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987).  Because these two provisions of the District's long-arm statute are equally as or more restrictive than the Due Process Clause, the Court will restrict its analysis to the relevant provisions of the long-arm statute.

      1.    *Film Defendants*

The plaintiffs cannot establish that this Court has personal jurisdiction over the Film Defendants under § 13-423(a)(1) because none of the defendants transacted relevant business in the District.  The plaintiffs do not allege that the Film Defendants showed *American Skin* in the District, FAC ¶ 22, only that they "directed their promotional activities for *American Skin* to residents of this District," *id.* ¶ 20.  "It is undisputed in this Circuit that a defendant's extensive advertising activity, when directly targeted at D.C. residents, can subject it to jurisdiction in the District."  *Gather Workspaces LLC v. Gathering Spot, LLC*, No. 19-cv-2669, 2020 WL 6118439, at *6 (D.D.C. Oct. 16, 2020).  For example, "placing pages of large, illustrated advertisements often in bold letters, with shopping incentives, in the District's major circulation newspaper" can constitute minimum contacts.  *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 331 (D.C. 2000).  But advertisements that are "random, fortuitous, accidental, . . . attenuated," or "too trivial to cause a consequence in the District" cannot.  *Id.*

The Film Defendants' alleged promotional activities do not resemble the type of advertising that constitutes minimum contacts with this jurisdiction.  The two remote, Parker Decl.

5

¶¶ 11–12, Dkt. 41-2,[2] promotional press interviews that defendant Parker did for the Howard University Alumni Association, FAC ¶ 20, and for the Roland Martin Unfiltered Show, *id.* ¶ 21, are not alleged to have occurred in the District, or to have targeted D.C. residents, *see id.* ¶¶ 20–21, 24.  And even assuming that the Roland Martin interview, which is described as a "daily digital show broadcasting from Washington D.C.," *id.* ¶ 21, took place in D.C.,"[n]o cases in this Circuit have determined that personal jurisdiction exists over a foreign defendant resulting from their alleged solicitation of customers in D.C. arising from a single [broadcasted] news appearance," *Gather*, 2020 WL 6118439, at *8 (finding no personal jurisdiction where defendant was interviewed one time on local Washington D.C. CBS affiliate).

Nor does personal jurisdiction arise out of the Film Defendants' so-called "advertising strategy," which allegedly "featured a significant push on social media[] targeting Washington, DC residents via Instagram and Facebook."  FAC ¶ 9.  Aside from a single post that defendant Parker made to his personal Instagram profile, *id.* ¶ 23—"THIS FRIDAY Jan. 15th, 2021 – Get your tickets for 'American Skin' in the following theaters," Nathaniel Parker (@origi_nate), Instagram, https://www.instagram.com/p/CJ4QyO2H3ZF/—the plaintiffs do not offer any other instances in which the defendants engaged in D.C.-targeted social media advertising, *see id.* ¶ 27; Pls.' Opp. at 12–14.  Conclusory statements about a targeted advertising campaign are insufficient to establish jurisdiction.  *See IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 107–08 (D.D.C. 2018) ("conclusory statements or a bare allegation of conspiracy or agency" do not establish jurisdiction (internal quotation marks omitted)).

---

[2] As noted above, the Court may "receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts."  *Triple Up*, 235 F. Supp. 3d at 20 (citation omitted).

Moreover, it is a stretch to characterize the single Instagram post as a D.C.-targeted advertisement. One slide of the Instagram posting lists theaters showing *American Skin*, including the "Berkeley Plaza 7 Theatre – Martinsburg, WV" under a header titled "Washington, DC." *See* Nathaniel Parker (@origi_nate), Instagram, https://www.instagram.com/p/CJ4QyO2H3ZF/. The post also encourages viewers to "please support local Black Owned restaurants during your watch parties for the film," and lists restaurants in many major metropolitan areas, including D.C. *Id.* Even so, this posting, which was available to viewers everywhere, is "more like a broad national advertising campaign" than targeted advertising sufficient to establish personal jurisdiction in this District over the defendants. *Sweetgreen, Inc. v. Sweet Leaf, Inc.*, 882 F. Supp. 2d 1, 5–6 (D.D.C. 2012); *see also Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 760 (D.C. 2009) (one listing in Yellow Pages "did not rise to the [scale and scope] of active solicitation of patients in the District . . . deemed significant" in other cases); *Gather*, 2020 WL 6118439, at *7 (one "D.C.-specific Instagram account" that linked viewers to a registration page on the defendants' website was not a minimum contact); *cf. Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980–91 (9th Cir. 2021) (finding "significant advertising efforts" where Australian company targeted Black Friday sales in the U.S. by advertising on Instagram with the words "ATTENTION USA BABES"). Put another way, by listing D.C. as just one of 15 or more major cities somewhat near theaters showing the film, the Instagram post more resembled "an advertisement placed in a national newspaper that happens to circulate in the [District]" than "an advertisement placed specifically in the [District's] local paper."[3] *Ralls Corp. v. Terna Energy USA Holding Corp.*, 920 F. Supp. 2d 27, 32 (D.D.C.

---

[3] In the case of the Martinsburg, W.V. theater listed in the Instagram posting under the heading "Washington, D.C.," the connection with D.C. was especially tenuous given that the theater was located roughly 75 driving miles from D.C. The plaintiffs further allege, without record support, that *American Skin* also played in Virginia and Maryland theaters. *See* FAC ¶ 57. But even

7

2013); *see also Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1, 3–4 (D.D.C. 1996) (calling this distinction "significant").

Section 13-423(a)(4) of the District's long-arm statute also does not apply to the Film Defendants. The plaintiffs have not established the requisite "plus factor," namely that the Film Defendants regularly do business, engage in a persistent course of conduct, or derive substantial revenue from the District. *Crane*, 814 F.2d at 763. As this Court previously explained, "[t]he plaintiffs offer nothing concrete to suggest that any defendant" meets this plus factor, Order at 2, and the plaintiffs have added no new allegations to the amended complaint that do so, *see* Pls.' Opp. at 20 (citing "the promotional activities described above" as evidence of the plus factor). The plaintiffs' conclusory contention that the Film Defendants "derived a substantial profit from residents in this District who bought movie tickets, streamed the movie online, rented the movie on-demand, or purchased [related] merchandise" is also not enough. *Id.* They have provided no evidence that the Film Defendants derived "enough revenue to indicate a commercial impact in the [District], such that a defendant fairly could have expected to be hauled into court there." *Delahanty v. Hinckley*, 686 F. Supp. 920, 925 (D.D.C. 1986), *aff'd*, 900 F.2d 368 (D.C. Cir. 1990); *see* FAC ¶¶ 58–59.

Because the plaintiffs have not shown that either prong of the District's long-arm statute applies, this Court does not have personal jurisdiction over the Film Defendants. The plaintiffs' claims against the Film Defendants will therefore be dismissed under Rule 12(b)(2).

---

assuming that is true, the sole advertisement identified by the plaintiffs, Parker's Instagram posting, did not reference any theaters in either state.

2.   *Defendant Lee*

For similar reasons, the plaintiffs also have not shown that either provision of the District's long-arm statute applies to defendant Lee. As to section 13-423(a)(1), the plaintiffs have not shown that defendant Lee transacted any business related to this action in the District. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (requiring that the action "arise[] out of or relate[] to" the defendant's contacts with the District (cleaned up)). The complaint alleges that Lee engaged in three activities involving this District: (1) promoting *American Skin*, which was billed as "A Spike Lee Presentation," "after the Venice Film Festival," FAC ¶ 28; (2) "serv[ing] on the Advisory Board for AFI DOCS, the American Film Institute's annual documentary festival traditionally held in the Washington, DC area," *id.* ¶ 29; and (3) "travel[ing] to this district on December 16, 2021 to promote a new book about his filmmaking career," *id.* The latter two activities are irrelevant to the section 13-423(a)(1) analysis because Lee's position on the AFI DOCS Board and personal travel have no relation to this action.

Lee's involvement in promoting *American Skin* is also insufficient to constitute transacting business in the District because the plaintiffs have not shown that any of Lee's promotional activities were directed toward the District or its residents. As reflected in his contract with ASP Film, Lee agreed to promote *American Skin* only "in connection with the screening of [the film] at the 2019 Venice Film Festival," and those "promotional services [were] the only services provided by [Lee] in connection with [the film]." Grant Decl. Ex. A at 4, Dkt. 45-1. In exchange for this promotion, he was given credit in the film through its listing as "A Spike Lee Presentation." *Id.* These activities are, by themselves, not sufficient to establish that Lee purposefully availed himself of the District. *See Hayes v. FM Broad. Station WETT*, 930 F. Supp. 2d 145, 151–52 (D.D.C. 2013) (finding no jurisdiction where plaintiff's allegations were "based solely on the

ability of District residents to access the defendants' websites," as "the defendants [did not] purposefully avail[] themselves of the District of Columbia any more than they availed themselves of every other jurisdiction in which their website was accessible" (cleaned up)). That a 2021 *Business Insider* article described Lee as "currently on the press tr[ai]l to promote the work of . . . Nate Parker," FAC ¶ 28, is not enough to establish otherwise.

As to section 13-423(a)(4), the plaintiffs have offered scant evidence of the requisite "plus factor." They make only the bare allegations that Lee traveled to the District one time in December 2021, that he serves on an advisory board for a festival traditionally held in the District, FAC ¶¶ 27–29, and that he derived substantial revenues from the District for showings of *American Skin*, Pls.' Opp. at 20. For the reasons already explained above, and because *one* business trip to the District does not constitute regular or persistent contact with the District, these contacts are insufficient to establish that section 13-423(a)(4) applies. *See Parsons v. Mains*, 580 A.2d 1329, 1330–31 (D.C. 1990) ("Whatever the concept of a 'continuous and persistent course of business' means, it is not satisfied by the defendant's entry of an appearance as counsel in two or at most three matters . . . ."). The Court will therefore dismiss the plaintiffs' claims against defendant Lee pursuant to Rule 12(b)(2).

**B.     Sanctions**

Defendant Lee's motion to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure will be denied. Lee seeks sanctions because the plaintiffs failed to seek leave to file an amended complaint. *See* Def.'s Mem. at 15–18, Dkt. 42-1. Because this Court's Minute Order of May 2, 2022 denied Lee's previous motion to dismiss as moot, permitted the plaintiffs to file the First Amended Complaint, and ordered Lee to respond to the amended complaint, the Court will not award sanctions here. *See Henok v. Chase Home Fin., LLC*, 926 F. Supp. 2d 100, 104 (D.D.C.

2013) ("The district court is accorded wide discretion in determining whether sanctions are appropriate." (cleaned up)); *Atkins v. Fischer*, 232 F.R.D. 116, 126 (D.D.C. 2005) ("Since the 1993 amendments, the language of Rule 11 indicates that the imposition of sanctions is left to the discretion of the district court judge.").

## CONCLUSION

For the foregoing reasons, the Court grants the Film Defendants' motion to dismiss, grants defendant Lee's motion to dismiss, and denies defendant Lee's motion to impose sanctions. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

December 2, 2022